**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KRISTY SPENCER,                                    Case No. 1:10-cv-216

      Plaintiff,                                    Weber, J.
                                                   Bowman, M.J.

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.


**REPORT AND RECOMMENDATION**

      Plaintiff Kristy Spencer filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes and also moves the Court to remand this case pursuant Sentence Six of 42 U.S.C. §405(g).  As explained below, I conclude that the ALJ's finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record and Plaintiff's Motion to Remand be denied.

**I. Summary of Administrative Record**

      On May 30, 2006, Plaintiff filed applications for Supplemental Security Income (SSI) and for Disability Insurance Benefits (DIB), alleging a disability onset date of March 1, 2006, due to rheumatoid arthritis, depression, migraines, and a thyroid problem.  (Doc. 5-5 at 2-10, Doc. 5-6 at 7).  She was 33 years old at the time of her alleged disability.  (Doc. 5-2 at 21).  After Plaintiff's claims were denied initially and upon reconsideration, (Doc. 5-3 at 2-5, Doc. 5-4 at 2-14), she requested a hearing *de novo*

before an Administrative Law Judge ("ALJ").  (Doc. 5-4 at 15).  On March 23, 2009, an evidentiary hearing was held in Dayton, Ohio, at which Plaintiff was represented by counsel.  (Doc. 5-2 at 24-56).  At the hearing, ALJ Amelia G. Lombardo ("ALJ Lombardo") heard testimony from Plaintiff and from Vanessa Harris, an impartial vocational expert ("VE Harris").

On April 14, 2009, ALJ Lombardo entered her decision denying Plaintiff's DIB and SSI applications.  (Doc. 5-2 at 10-23).  The Appeals Council denied her request for review.  (Doc. 5-2 at 2-6).  Therefore, ALJ Lombardo's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2010 (Exhibit 3D).

2.   The claimant has not engaged in substantial gainful activity since March 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.   The claimant has the following severe impairments: somatoform disorder; dysthymic disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

     ...............................................

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

     ...............................................

5.   After careful consideration of the entire record, the undersigned finds claimant has the residual functional capacity to perform a full range of

work at all exertional levels with the following limitations: simple, unskilled work with low stress and minimum contact with the general public.

................................................

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

................................................

7.      The claimant was born on October 22, 1972. From the alleged disability onset date through the present claimant has been between 33 and 36 years old which is defined as a younger individual age 18-44 (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      The claimant does not have "transferable" work skills within the meaning of the Social Security Act (20 CFR 404.1568 and 416.968).

................................................

10.     Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

................................................

11.     The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(*Id.* at 12-22). Thus, ALJ Lombardo concluded that Plaintiff was not under disability as defined by the Social Security Regulations and was not entitled to SSI or DIB.

On appeal to this court, Plaintiff maintains that ALJ Lombardo erred by: 1) improperly dismissing the findings of treating physician, Dr. Williams; 2) failing to find that Plaintiff's obesity was a severe impairment; 3) inadequately assessing Plaintiff's

pain and credibility; and 4) improperly asking the vocational expert a deficient hypothetical question.  In the alternative, Plaintiff argues that new evidence submitted to the Appeals Council concerning medical treatment obtained after ALJ Lombardo closed the record, warrants remanding the case for further development at the administrative level under sentence six of 42 U.S.C. §405(g).  (Doc. 6).

## II. Analysis

### A. Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1352c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. §405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence

4

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.
> . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.
>
> *Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency ("SSA") is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. §404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she

suffered impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. §423(d)(1)(A).  In this case, Plaintiff alleges that the four identified errors at the fifth step of the sequential analysis require this court to reverse the Commissioner's decision.

### B.  The ALJ's Rejection of Treating Physician's Opinion

In her first assignment of error, Plaintiff complains that ALJ Lombardo improperly rejected the findings and conclusions of her treating primary care physician, Mark Williams, M.D. ("Dr. Williams").  20 C.F.R. §404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."  *Id.*  (emphasis added).  *See Warner v. Comm'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as she sets forth a reasoned basis for her rejection."  *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. §1527(d)(2).  Likewise, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services,* 927 F.2d 228, 230-31 (6th Cir. 1990) (affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).

6

On February 6, 2009, Dr. Williams completed a Residual Functional Capacity evaluation ("RFC") on Plaintiff's behalf.  (Doc. 5-7 at 137-40).  On that form, Dr. Williams opined that Plaintiff's pain would frequently interfere with her attention and concentration and she was incapable of even low stress jobs.  (*Id.* at 138).  Further, Dr. Williams found that Plaintiff could walk less than one block without pain, sit only 45 minutes at a time, stand only 15 minutes, and could only sit less than two hours total in an eight-hour workday and stand/walk less than two hours in an eight-hour workday.  (*Id.* at 138-139).  Dr. Williams also noted that the Plaintiff would need to walk for 5 minutes every 45 minutes, shift positions at will, and take unscheduled breaks every 10 minutes.  (*Id.*).  He noted Plaintiff could rarely lift 10 pounds and rarely twist, stoop, and climb ladders, never crouch or squat and only occasionally climb stairs.  (*Id.* at 140).  Moreover, Dr. Williams found that Plaintiff could only use her hands, fingers and arms less than 5% of the day and she would need to be absent from work more than 4 days per month.  (*Id.*).

In her decision, ALJ Lombardo rejected Dr. Williams' assessment of Plaintiff's extreme limitations:

> [T]he conclusions of treating physician Dr. Williams cannot be given controlling, or even deferential, weight.  His conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the case record.  The only plausible explanation for his pessimistic assessments of claimant's functional capabilities is that such assessments were based on unquestioning acceptance of claimant's subjective complaints…the claimant has no severe physical impairments and the weight of the evidence of record does not establish claimant is unable to work.

(Doc. 5-2 at 18).   Plaintiff contends that the limitations found by Dr. Williams were supported by ample objective evidence, including: Plaintiff's pain medication prescriptions, (i.e. Vicodin and Prednisone), and the nature and length of Dr. Williams' treatment of Plaintiff.  (Doc. 6 at 14-15).   However, although the opinions of treating physicians must be considered, ultimately the determination of a claimant's RFC is "reserved to the Commissioner."  20 C.F.R. §404.1527(d)(2), §1527(e)(2).

In rejecting the limitations assessed by Dr. Williams, ALJ Lombardo explained that, "the only plausible explanations for his pessimistic assessments of claimant's functional capabilities is that such assessments were based on unquestioning acceptance of claimant's subjective complaints." (Doc. 5-2 at 18).  ALJ Lombardo went on to point out that Dr. Williams' assessment of Plaintiff's functional abilities is not well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with the other substantial evidence in the case record.  (*Id.*).   By way of example, ALJ Lombardo provided that Plaintiff, with her impairments continued to perform activities of daily living, including: reading her e-mail, making her children breakfast, and completing most household chores.  (Doc. 5-7 at 9-10).  ALJ Lombardo's rejection of Dr. Williams' assessment satisfies the "good reasons" requirement.  The extreme limitations found by Dr. Williams are not supported by objective medical evidence.   Rather, I conclude from a review of the same medical records that substantial evidence supports ALJ Lombardo's assessment.

The record does reflect a diagnosis of somatoform disorder; dysthymic disorder and a generalized anxiety disorder; however, the record does not support Dr. Williams'

assessment of Plaintiff's negative functional abilities.  A diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual.  *See Young v. Secretary of Health and Human Services,* 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue,* 2009 WL 6093338 at *8 (6th Cir. December 1, 2009).

Medical and treatment providers repeatedly noted that Plaintiff did not have any medical determinable impairments that would cause her the pain that she alleged.  For example, Plaintiff's rheumatologist, David Greenblatt, M.D. ("Dr. Greenblatt"), noted on July 19, 2006, that Plaintiff's review of systems for inflammatory connective tissue disease were entirely negative and that she had a negative ANA and rheumatoid factor and only a minimally elevated sedimentation rate.  (*Id.* at 53).  As a result, Dr. Greenblatt diagnosed Plaintiff with arthraliga of multiple joints and noted the etiology of her joint symptoms was not clear.  (*Id.*).  On June 27, 2006, Plaintiff presented to the emergency room complaining of back pain, however, imagining results of her lumbar and thoracic spines were normal.  (*Id.*  at 80-83).

When consulting physician, Loraine Glaser, M.D. ("Dr. Glaser") examined Plaintiff on September 12, 2006, she noted that Plaintiff's blood tests were negative for symptoms of rheumatoid arthritis, had preserved muscle and grasp strength in the upper extremities, mild restriction in forward bending at the waist, normal range of motion in her knees, and no evidence of any acute inflammation of any joint.  (*Id.* at 33, 35).  Dr. Glaser found that Plaintiff could engage in sedentary tasks and also perform a moderate to marked amount of sitting, ambulating, standing, bending, kneeling,

pushing, pulling, reaching, handling, and carrying heavy objects. (*Id.* at 35). Dr. Glaser found Plaintiff's subjective complaints of neck, shoulder, knee, back, hand, feet, and wrist pain to be disingenuous because Plaintiff was wearing numerous items, to the appointment, that would require dexterity to put on and remove, such as eye make-up, mascara, multiple earrings in both ears, two small clasp necklaces and bracelets. (*Id.* at 32). Additionally, Dr. Glaser noted that Plaintiff had a confrontational, almost belligerent, attitude in response to her questions. (*Id.* at 33). Dr. Glaser noted that Plaintiff was an obese, but generally healthy young woman. (*Id.* at 34).

When consultative psychologist Jayne Malpede, Ph.D ("Dr. Malpede") examined Plaintiff on August 29, 2006, she found that Plaintiff was alert and orientated and that she had adequate insight and judgment. (*Id.* at 10-11). Dr. Malpede assigned Plaintiff a Global Assessment of Functioning score of "55," which is indicative of moderate symptoms. (*Id.* at 13). Dr. Malpede also noted that Plaintiff reported that Dr. Williams prescribed her Celexa but that she had never been involved in counseling for her depression or hospitalized for psychiatric reasons. (*Id.* at 9). On September 7, 2006, Plaintiff was also evaluated by state psychologist, Frank Orosz, Ph.D. ("Dr. Orosz"). (*Id.* at 14-31). Dr. Orosz found Plaintiff had only mild limitations in activities of daily living; moderate limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence, or pace. (*Id.* at 28). Dr. Orosz also found that Plaintiff could relate superficially with others and could perform simple repetitive tasks without strict time demands. (*Id.* at 16).

ALJ Lombardo afforded Dr. Glaser's, Dr. Malpede's, and Dr. Orosz's opinions of

Plaintiff's physical functional capacity greater weight than Dr. Williams as they are specialists rather than a mere family practice physician. (*See* Doc. 5-2 at 18). ALJ Lombardo found that they based their conclusions on their own detailed findings after examinations and other medical evidence in the claim file. (*See Id.* at 18-19). The Court notes that Dr. Glaser's, Dr. Malpede's and Dr. Orosz's findings were also consistent with the weight of the evidence in the record, whereas Dr. Williams' diagnoses appear to be based on Plaintiff's subjective complaints.

ALJ Lombardo does acknowledge that while Plaintiff has been diagnosed with arthralgias, tests have been negative for rheumatoid arthritis. (Doc. 5-7 at 53). Moreover, imagining of Plaintiff's back has been unremarkable and the record demonstrates that Plaintiff's complaints are more of a psychosomatic nature. (*Id.* at 67-68, 71-72, 80, 82-83). In addition, ALJ Lombardo explains that the extreme limitations Dr. Williams detailed in his 2009 assessment were inconsistent with statements made by Plaintiff that she was able to engage in such activities as: cook, grocery shop, transport her children, help with her son's schoolwork, shower, dress, and groom herself. (Doc. 5-2 at 32-36). *See* 20 C.F.R. §404.1527(d)(4) ("Consistency." Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Even if the Court were to assume that Dr. Williams' opinions were consistent with other record evidence, it is not necessarily enough to warrant reversal; "[a]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th

11

Cir. 1986).  Specifically, Dr. Williams failed to provide a detailed explanation as to his extreme limitations in view of the absence of any focal deficit of motor power or reflexes, and the generally conservative nature of Plaintiff's treatment.  The Court also finds it important to note that Dr. Williams failed to put in his explanation that Plaintiff had not actively pursued any psychotherapy or mental health treatment.  *See* 20 C.F.R. §404.1527(d)(3) ("the better an explanation a source provides for an opinion, the more weight we will give that opinion.").  Dr. Williams simply checked boxes indicating that Plaintiff's ability to sit, stand, and walk was affected.  (Doc. 5-7 at 139).  He also checked that due to Plaintiff's impairments her reaching, handling and fingering abilities were limited, but gave no reasons why he believed this to be so.  (*Id.* at 140).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### C.  Plaintiff's Obesity

Plaintiff's second statement of error provides that ALJ Lombardo erred by failing to find that Plaintiff's obesity was a severe impairment and its resulting effect on her other medical conditions in violation of Social Security Ruling 02-01p ("SSR 02-01p").  SSR 02-01p sets forth the SSA's policy used in evaluating obesity when completing the sequential benefits analysis.  SSR 02-01p provides that:

> [O]besity may be considered severe alone or in combination with another medically determinable impairment…the SSA will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe…a claimant's obesity must be considered not only at step two of the Commissioner's five step evaluation process, but also at the subsequent steps.

*See* SSR 02-01p, 2000 WL 628049 (Sept. 12, 2002).  *See also* 20 C.F.R. §404.1523 (explaining that if the SSA finds "a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.").  Even though obesity is to be considered during the disability determination, it "may or may not increase the severity or functional limitations of the other impairment and should be evaluated on a case by case basis.  Obesity "is 'not severe' only if it is a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities." SSR 02-01p, 2000 WL 628049.

Although ALJ Lombardo did not consider Plaintiff's obesity to be a severe impairment, she did acknowledge Dr. Glaser's and the state agency medical consultants' opinions that obesity was a relevant diagnosis in Plaintiff's claim.  (Doc. 5-2 at 13-14, 18, 20).  However, the mere diagnosis of impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.  *See McKenzie v. Commissioner of Social Security,* No 99-3400, 2000 WL 687680 at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen,* 853 F.2d 488, 489 (6th Cir. 1988).  None of the medical experts of record reported that Plaintiff's obesity affected her abilities to function.  Specifically, Plaintiff never alleged at any time to her treating or consulting physicians that her obesity resulted in any work limitations.

Contrary to Plaintiff's claim, ALJ Lombardo also considered Plaintiff's non-severe impairments including obesity, throughout the remaining steps of the sequential benefits analysis.  (*Id.* at 12-22).  Once an ALJ determines that a claimant has at least one

severe impairment, the ALJ must continue with the remaining steps in the sequential evaluation process and consider all impairments, including those which were not found to be "severe" at step two. *Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987); *See* 20 C.F.R. §§ 404.1520, 416. 920. In this case, ALJ Lombardo found that Plaintiff had severe impairments, including: somatoform disorder, dysthymic disorder, and anxiety disorder, and therefore, continued the evaluation process after step two. (Doc. 5-2 at 12-22).

At each of the subsequent steps, ALJ Lombardo considered Plaintiff's non-severe impairments, including obesity. (*Id*). ALJ Lombardo expressly considered Plaintiff's obesity in her determination that Plaintiff did not have any impairment or combination of impairments that met or equaled a listed impairment. (*Id.* at 16). ALJ Lombardo also considered all of Plaintiff's documented symptoms and limitations, regardless of whether they were obesity-related, in assessing Plaintiff's RFC. (*Id.* at 16-20). ALJ Lombardo thus properly considered Plaintiff's diagnosis of obesity in her analysis and thus, satisfied the requirements of SSR 02-01p. Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### D. Credibility Assessment and Evaluation of Pain

Plaintiff's third claim of error finds fault with ALJ Lombardo's conclusion that her testimony was not entirely credible. Specifically, Plaintiff claims that ALJ Lombardo failed to consider all the factors listed in 20 C.F.R. §404.1529 and Social Security Ruling 96-7p. With respect to Plaintiff's subjective complaints of neck, shoulders, knees, back, hands, feet and wrist pain, Plaintiff alleges that ALJ Lombardo failed to consider her

14

symptoms and testimony to the extent that they purported to describe a condition of a disabling nature. (Doc. 6 at 18-19). Plaintiff argues that ALJ Lombardo failed to consider her treatment at the emergency room and with Dr. Williams. (*Id.* at 18). Plaintiff also argues that ALJ Lombardo ignored the fact that Dr. Williams regularly prescribed her pain medication (i.e., Vicodin and Prednisone). (*Id.*).

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

In this matter, ALJ Lombardo noted various factors in her decision which caused her to question Plaintiff's credibility. For instance, she noted that Plaintiff, has not always been fully compliant with treatment – refusing and declining services, choosing not to be admitted to a behavioral health unit. (Doc. 5-7 at 68). Plaintiff has

demonstrated active-drug addiction behavior (i.e. a member of Plaintiff's family anonymously telephoned Dr. Williams office stating that Plaintiff was "hooked on her meds" and was "taking too many pills"), and she reportedly engages in a wide variety of activities which appear inconsistent with a totally debilitated individual such as reading her e-mail and completing most household chores.  (*Id.* at 9-10, 89).  Plaintiff also testified that she was able to engage in such activities as: cooking, grocery shopping, transporting her children, helping with her son's schoolwork, showering, dressing, and grooming herself despite her allegations of severe weakness and fatigue.  (Doc. 5-2 at 32-36).  Plaintiff also frequently walks around King's Island amusement park with her children.  (Doc. 5-7 at 89).

ALJ Lombardo found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and that Plaintiff has established by sufficient evidence that she suffers from the following "severe" impairments: somatoform disorder; dysthymic disorder and anxiety disorder.  (Doc. 5-2 at 16).  However, in reviewing Plaintiff's multiple RFC assessments, ALJ Lombardo also found that Plaintiff's statements concerning the severity, intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with said assessments.  (*See Id.* at 20).

As noted above, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Here, ALJ Lombardo noted that the objective medical evidence, including x-ray and

imagining findings showed completely normal results. (Doc. 5-7 at 53). In addition, ALJ Lombardo specifically recognized that, in regards to Plaintiff's complaints of back pain, her lumbar and thoracic spines, upon examination, appeared normal. (*Id.* at 80-83).

Therefore, because ALJ Lombardo found inconsistencies between the objective medical evidence and Plaintiff's testimony about the extent of her pain and limitations, it was permissible for her to discredit Plaintiff's testimony about the severity of her symptoms. As a result, given the great deference to an ALJ's credibility assessment, I conclude that substantial evidence supports ALJ Lombardo's decision to discredit Plaintiff's statements about the severity of her symptoms.

### E. Hypothetical Questions to the Vocational Expert

Plaintiff contends in her fourth statement of error that ALJ Lombardo's RFC determination is not supported by substantial evidence as it did not incorporate the opinions of Dr. Williams, Dr. Glaser or reflect the mental limitations set forth by the state agency reviewing psychologist, Dr. Orosz. (Doc. 6 at 21). As a result, Plaintiff asserts that the jobs identified by VE Harris, that Plaintiff was capable of engaging in, were irrelevant since the hypothetical questions did not properly reflect Plaintiff's accurate RFC. (*Id.*).

However, this contention lacks merit as the hypothetical questions ALJ Lombardo asked VE Harris, and the corresponding answers she relied on, were adequate and proper because they included Plaintiff's substantiated impairments and limitations. (Doc. 5-2 at 36-38, 40). The hypothetical questions took into consideration the impairments Plaintiff suffered from, (i.e., somatoform disorder; dysthymic disorder, and

17

anxiety disorder), and the medical restrictions that were supported by the record as a whole.  (*Id.*).

The ALJ's function is to decide Plaintiff's restrictions and how they affect her residual functional capacity.  *Maziarz v. Secretary of Health and Human Services,* 837 F.2d at 247.  A hypothetical question that an ALJ poses to a vocational expert must only include those limitations that are supported by the record for the relevant period.  *Varley v. Secretary of Health and Human Services,* 820 F.2d 777, 780 (6th Cir. 1987).  In arguing that ALJ Lombardo asked VE Harris deficient hypothetical questions, Plaintiff claims that she failed to take into consideration Dr. Williams', Dr. Glaser's, and state agency medical consultants' opinions.  (Doc. 6 at 21).  However, as previously discussed, ALJ Lombardo did not give Dr. Williams' or the state agency medical consultants' opinions controlling weight because they were not supported by the objective medical findings in the record.  (Doc. 5-2 at 18).  Specifically, ALJ Lombardo included only those limitations in her hypothetical questions to VE Harris that were supported by objective medical evidence in the record.  (*Id.* at  36-38, 40).  In regards to Dr. Glaser's and Dr. Orosz's opinions, ALJ Lombardo did in fact rely on their findings when posing the hypothetical question at issue, contrary to Plaintiff's allegations.  (*Id.* at 18).

Plaintiff has not shown that ALJ Lombardo's assessment of her RFC was based on legal error or unsupported by substantial evidence.  As a result, VE Harris' testimony regarding a hypothetical person with these limitations and abilities, which incorporated ALJ Lombardo's RFC, constituted substantial evidence to support the her conclusion at

step 5 of the sequential analysis.  (S*ee Id.* at 16-20).  Substantial evidence may be produced through reliance on the testimony of a vocational expert.  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (citing *Varley v. Sec. of Health & Human Svcs*., 820 F.2d 777, 779 (6th Cir. 1987).  Therefore, for the reasons stated above, Plaintiff's argument does not have merit.

### F. Sentence Six Remand

In addition to her statement of errors, Plaintiff moves that, pursuant to Sentence Six of 42 U.S.C. §405(g),[1] a remand is warranted due the existence of new material evidence she submitted to the Appeals Council after ALJ Lombardo closed the record. Pursuant to that provision, a court can remand for consideration of new evidence only if the plaintiff establishes that the evidence is material, and also establishes good cause for her failure to present the evidence to the ALJ.  *See Bass v. McMahon,* 499 F.3d 506 (6th Cir. 2007); *Brainard v. Sec'y of Health & Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989).  In this case Plaintiff seeks to introduce an April 15, 2009, adult diagnostic assessment performed by Joanna West, a Social Worker at Butler Behavioral Health Services, that provides a diagnosis of "mild depressive and anxiety disorder." (Doc. 5-7 at 142-158).  However, the record before ALJ Lombardo included a diagnosis of depression and anxiety dating at least back to December 27, 2006 (*Id.* at 49) and ALJ Lombardo specifically referenced that diagnosis in her opinion.  (Doc. 5-2 at 13).

---

[1]  Sentence Six of 42 U.S.C. §405(g) provides in part:

The court may…at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

Therefore, the Social Worker's report contains no "new" or "material" information but is instead cumulative.  In addition, Plaintiff fails to establish good cause why the Social Worker's evidence could not have been presented before ALJ Lombardo.

For similar reasons, the May 14, 2009 psychiatric diagnostic evaluation prepared by psychiatrist, Rakesh M. Kanaria, M.D. ("Dr. Kanaria"), at Butler Behavioral Health Services, diagnosing Plaintiff with major depressive disorder (Doc. 5-7 at 159-62), does not warrant remand.  "Material evidence is evidence that would likely change the Commissioner's decision."  *Bass v. McMahon,* 499 F.3d at 513 (citation omitted).  Dr. Kanaria's diagnosis is cumulative and unlikely to be given any weight by ALJ Lombardo. Plaintiff offers no reason for failing to obtain this opinion prior to ALJ Lombardo's decision other than the fact that she was on a waiting list for mental health treatment at the time of her hearing.  However, Plaintiff fails to specify whether she was on a waiting list for the particular treatment she received at Butler Behavioral Health Services on April 6, 2009 and May 16, 2009, as she was unable to remember the name of such facility at said hearing on March 23, 2009.  (Doc. 5-2 at 32).  Presumably she could have obtained a similar opinion regarding her mental health prior to ALJ Lombardo's decision, but instead the record reflects that she expressly rejected admission to a behavioral health unit on October 7, 2007.  (Doc. 5-7 at 68).

Of course, to the extent that Plaintiff has new evidence that her condition has worsened, she is free to submit a new application for benefits.  *See, e.g., Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 685 (6th Cir. 1992).  It is the function of this

Court only to review whether the "new" evidence warrants remand under Sentence Six of 42 U.S.C. §405(g).  In this case, it does not.

**III.  Conclusion and Recommendation**

For the reasons explained herein, **IT IS RECOMMENDED THAT:**

1.  The Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**;

2.  Plaintiff's motion to remand this case under Sentence Six of 42 U.S.C. §405(g) be **DENIED**; AND

3.  As no further matters remain pending for the Court's review, this case be **CLOSED.**

*s/Stephanie K. Bowman*
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KRISTY SPENCER,                                                  Case No. 1:10-cv-216

        Plaintiff,                                              Weber, J.
                                                                Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## <u>NOTICE</u>

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

22